```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SEAN KOH, et al.,                                                 :
                                                                  :
                            Plaintiffs,                           :
                                                                  :     22-CV-6639 (JMF)
                -v-                                               :
                                                                  :     OPINION AND ORDER
BONWOONG (BRIAN) KOO, et al.,                                     :
                                                                  :
                            Defendant.                            :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiffs Sean Koh and Koherent, Inc. bring breach of contract and other claims against Bonwoong (Brian) Koo and two entities, Maum Holdings, Inc. and Maum Capital Group, Inc. (the "Maum Entities"), as well as ten John Doe Defendants. They allege that Defendants failed to fulfill their end of a contract between Koo and Koherent, pursuant to which Koh was entitled to cash and stock compensation. ECF No. 53 ("SAC"), at 1, 30-31. The Maum Entities now move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss on the grounds that personal jurisdiction is lacking, venue is improper, and that Plaintiffs fail to state a claim. ECF No. 58 ("Maum Entities' Mem."), at 1. Koo separately moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for partial dismissal. ECF No. 59. Plaintiffs oppose both motions and, in the alternative, cross-move to transfer the entire lawsuit to the United States District Court for the District of New Jersey. ECF Nos. 70-71. For the reasons that follow, Defendants' motions are GRANTED and Plaintiffs' cross-motion is DENIED.[1]

---

[1] Defendants also move for the Court to take judicial notice of certain documents, including certificates of incorporation and other corporate filings by the Maum Entities. ECF No. 64. In light of the Court's conclusions below, that motion is denied as moot.

**BACKGROUND**

The following facts, drawn from the Second Amended Complaint (the "Complaint"), are assumed to be true for purposes of this motion and construed in the light most favorable to Plaintiffs. *See, e.g., Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013).

Koh is a New Jersey resident who describes himself as an "entrepreneur, businessman, and entertainment impresario" who owns and operates Koherent, a New Jersey corporation. SAC ¶¶ 2-3. Koo is a South Korean citizen who resides in California and, according to the Complaint, is the "scion of an affluent Korean family with extensive business interests worldwide," including a role as at least part owner and operator of Maum Holdings and Maum Capital Group, both of which are Delaware corporations. *Id.* ¶¶ 4-6. The ten John Doe defendants are "parties not yet identified who have contributed to the breaches of contract, unjust enrichment, and conversion that are the subject of this lawsuit, or have otherwise engaged in one or more of the wrongful practices alleged herein." *Id.* ¶ 7.

In 2014, Koo and Koherent entered into a non-disclosure agreement in advance of business discussions between Koo and Koh. *Id.* ¶ 12. Koh proceeded to invest millions of dollars in Koh's ventures, which subsequently went bankrupt. *Id.* ¶¶ 13-15. In 2020, Koo and Koherent signed a new non-disclosure agreement (the "NDA") in connection with negotiations over a new venture. *Id.* ¶¶ 17-21. Eventually, Koh and Koo agreed to the following terms for that new venture: In exchange for Koh's "engagement," he would receive an annual salary of $250,000, a 10% "carry" on all deals, a 2% equity interest in Maum Holdings, and a 10% ownership interest in any entertainment and/or music projects of the Maum Entities. *Id.* ¶ 22. Koh memorialized the terms in writing, and Koo confirmed his agreement. *Id.* Despite this

agreement, and despite Koh's work on behalf of this venture, *id.* ¶¶ 23-25, Koh "has yet to be provided any compensation at all for his work for Defendants," *id.* ¶ 26.

On the basis of these and other allegations, Plaintiffs bring seven claims. The Complaint appears to bring one claim against the Maum Entities alone, one claim against Koo alone, and five claims against all Defendants. Specifically, Plaintiffs allege that the Maum Entities breached the compensation agreement, *id.* ¶¶ 29-35, and that Koo violated the NDA, *id.* ¶¶ 59-67. In addition, they allege that all Defendants were unjustly enriched by Koh's uncompensated work, *id.* ¶¶ 36-40, and owe Plaintiffs an equitable accounting for that work, *id.* ¶¶ 41-48. Plaintiffs also assert a "veil piercing claim" against all Defendants — to wit, that the Maum Entities' "corporate veil [should] be pierced in order to make [Koh] whole for the losses sustained as a result of Defendants' actions." *Id.* ¶¶ 49-58. They also allege that all Defendants breached their fiduciary duties to Koh. *Id.* ¶¶ 68-82. Finally, they bring a claim of promissory estoppel relating to unmet promises of compensation. *Id.* ¶¶ 83-90.

## THE MAUM ENTITIES' MOTION TO DISMISS

The Court begins with the Maum Entities' motion to dismiss, pursuant to Rule 12(b)(2), for lack of personal jurisdiction. When responding to a Rule 12(b)(2) motion, a "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (per curiam) (internal quotation marks omitted). Where, as here, there has been no discovery or evidentiary hearing, plaintiffs need only make a *prima facie* showing that personal jurisdiction exists. *See, e.g.*, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam). Such a showing "entails making 'legally sufficient allegations . . . ,' including 'an averment of facts that, if credited[,] would suffice'" to establish that personal jurisdiction exists. *Penguin Grp. (USA) Inc.*

*v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). *See generally Dorchester Fin. Sec.*, 722 F.3d at 84-85. A court must construe "all allegations . . . in the light most favorable to the plaintiff." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks omitted).

Plaintiffs offer three alternative bases for personal jurisdiction over the Maum Entities, but each one is unavailing. First, Plaintiffs argue that the Court may exercise personal jurisdiction over the Maum Entities because they are alter egos of Koo, over whom the Court has personal jurisdiction. *See* ECF No. 70 ("Pls.' Maum Opp'n"), at 10-12. It is true that where a court has personal jurisdiction over one defendant, as it indisputably does over Koo, "it may also exercise personal jurisdiction over an alter ego defendant." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-967 (LJL), 2021 WL 918556, at *10 (S.D.N.Y. Mar. 10, 2021) (internal quotation marks omitted). Under New York law, a court may pierce the corporate veil for jurisdictional purposes when "the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor." *In re Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003); *see Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (noting that for jurisdictional purposes, unlike for liability purposes, use of control to commit a fraud or wrong is not required); *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 196 (2d Cir. 2005) (summary order); *cf. In re Platinum and Palladium Antitrust Litig.*, 14-CV-9391 (GHW), 2017 WL 1169626, at *48 n.23 (S.D.N.Y. Mar. 28, 2017) (acknowledging that "most district courts in this circuit — and the Second Circuit itself — point to *Marine Midland* as support for the proposition that the alter ego standard applicable to personal jurisdiction questions is different from the standard applicable to liability questions," but setting forth the

4

view that *Marine Midland* does not "establish[] a less onerous standard applicable in all" such cases). To determine whether this requirement is met, courts consider various factors: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address, and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms' length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities. *See, e.g.*, *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997); *accord N.Y. State Elec. and Gas Corp. v. FirstEnergy Corp.,* 766 F.3d 212, 224 (2d Cir. 2014) (substantially the same). A complaint with only "generalized and conclusory allegations," which "are essentially a recitation of the legal standard," is "plainly insufficient." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014) (summary order); *accord De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).

Measured against these standards, Plaintiffs' alter ego arguments fall short. Plaintiffs repeatedly assert that Koo exercised "complete domination and control" over the Maum Entities, SAC ¶¶ 51-56, but they support the assertion with only two specific allegations: that Koo acted as if he had the unilateral authority to offer Koh employment and compensation from the Maum Entities and that Koo "appoint[ed] Board Members who were under his domination and control." *Id.* These allegations are not enough. Koh's repeated assertions that Koo exercised "complete domination and control" are plainly insufficient on their own. *See, e.g.*, *Jiaxing Hongyu Knitting Co. v. Allison Morgan LLC*, No. 11-CV-9342 (AJN), 2013 WL 81320, at *8 (S.D.N.Y. Jan. 8, 2013) (Nathan, J.) (dismissing a veil-piercing claim predicated on "conclusory assertions"); *In re*

5

*Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426-27 (S.D.N.Y. 2003) (same); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01-CV-2946 (AGS), 2002 WL 432390, at *12 (S.D.N.Y. Mar. 20, 2002) (same).  And the two specific allegations do not suffice given the absence of any allegations concerning the factors referenced above, including disregard of corporate formalities, inadequate capitalization, and intermingling of funds.  Indeed, as to the second allegation, it is well established that the appointment of "loyal board members" by a majority owner is not a basis for piercing the corporate veil, as such appointments are "a due exercise of power incidental to ownership."  *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 58 (2d Cir. 2021) (internal quotation marks omitted).  Thus, Plaintiffs' alter ego arguments do not support the exercise of personal jurisdiction over the Maum Entities.

Second, Plaintiffs invoke N.Y. C.P.L.R. § 302(a)(2) and (3), provisions of New York's long-arm statute.  SAC ¶ 9.  But they conspicuously fail to address the requirements of these provisions.  Most notably, nowhere do Plaintiffs address the Maum Entities' argument that they fail to allege that Defendants "commit[ed] a tortious act *within the state*," as required by Section 302(a)(2), or that Defendants "commit[ed] a tortious act without the state *causing injury to person or property within the state*," as required by Section 302(a)(3).  At most, Plaintiffs allege that the Maum Entities, "by way of [Koo], expressly sought 'to avail [themselves] of the privilege of conducting activities within' the State of New York."  Pls.' Maum Opp'n 14.  But such allegations do not suffice.  Similarly, Plaintiffs' allegations that Koh does business in New York, including by "work[ing] from offices in New York City in furtherance of his work for and on behalf of" the Defendants, *id.* ¶ 10; that Koh was "a resident of Fort Lee, County of Bergen, State of New Jersey, *a suburb of New York City*," SAC ¶ 2 (emphasis added); that Koh is an "entrepreneur, businessman, and entertainment impresario . . . who can specifically help with

6

organizational, recruiting, fundraising, and networking efforts for Defendants in the New York area," *id.*; and that Koo "networked with [] different people [who were on an investor presentation] . . . [who] were high net worth individuals from the New York City area," *id.* ¶ 26, do not demonstrate that a tortious act or a resulting injury occurred in the state of New York (much less a "suburb" or the broader "New York City area"). In short, Plaintiffs have "not articulated a non-speculative and direct injury to person or property in New York," so they cannot establish personal jurisdiction. *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 220 (2d Cir. 2013).

Finally, Plaintiffs invoke a New York forum-selection clause in the NDA between Koo and Koherent. But the Maum Entities did not sign the NDA.[2] Plaintiffs argue that the forum-selection clause can be applied to the Maum Entities despite that fact because the companies are "closely related" to Koh, who did sign the NDA. *See* Pls.' Maum Opp'n 8-9. Admittedly, that argument does find support in some district court decisions. *See, e.g.*, *HSM Holdings, LLC*, 2021 WL 918556, at *8 (collecting cases); *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 324 (S.D.N.Y. 2017) (collecting cases).[3] But the better view, persuasively articulated by Judges Rakoff and Liman in two recent cases, is that a forum-selection clause does not give rise to personal jurisdiction over a non-signatory unless the non-signatory is "otherwise bound to the agreement, as for example under the ordinary law of successor liability and alter ego." *HSM Holdings, LLC*, 2021 WL 918556 at *9; *see also Arcadia Biosciences, Inc. v. Vilmorin & Cie*,

---

[2]    Indeed, Maum Capital Group did not even exist when the NDA was signed. *See* ECF No. 62, ¶¶ 3, 5; *see also* ECF No. 62-2.

[3]    The Second Circuit has expressly "not reach[ed] the question of when a signatory may enforce a forum selection clause against a non-signatory." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 n.10 (2d Cir. 2013) (cleaned up).

356 F. Supp. 3d 379, 394-95 (S.D.N.Y. 2019).[4] As Judge Liman explained: "Under federal law, the exercise of jurisdiction by a court does not turn just on whether the defendant could anticipate being sued in the forum, but on whether the defendant has taken some act that either evinces its consent to being sued in the forum or that gives rise to the court's power to assert jurisdiction in the absence of consent." *HSM Holdings, LLC*, 2021 WL 918556 at *13; *see also Arcadia*, 356 F. Supp. 3d at 394-95 (emphasizing that "[t]he rules governing personal jurisdiction . . . are driven by constitutional concerns over 'the court's power to exercise control over the parties'" and that "[t]hese constitutional requirements caution against a liberal application of forum selection clauses to non-signatory defendants" (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)). Here, as discussed above, Plaintiffs proffer no basis to bind the Maum Entities to the NDA signed by Koh. It follows that the forum-selection clause to which *Koh* agreed does not support personal jurisdiction over the *Maum Entities*.

In sum, Plaintiffs fail to proffer any basis for the Court to exercise personal jurisdiction over the Maum Entities.[5] In light of that conclusion, the Court need not and does not address the Maum Entities' other arguments for dismissal or Defendants' motion for judicial notice.

---

[4]   In *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945 (JMF), 2019 WL 293329 (S.D.N.Y. Jan. 23, 2019), decided just days before Judge Rakoff's decision in *Arcadia*, this Court did enforce a forum-selection clause against non-signatories on the ground that they were "closely related" to a signatory. *See id.* at *4. But that decision is arguably reconcilable with the decisions of Judges Rakoff and Liman, for reasons that the latter explained in *HSM Holdings*. *See* 2021 WL 918556 at *14. To the extent that it is not, the Court is persuaded by the later reasoning of *Arcadia* and *HSM Holdings, LLC*.

[5]   Perhaps recognizing that their current allegations are insufficient to support personal jurisdiction against the Maum Entities, Plaintiffs argue in the alternative that the Court should reserve decision and allow for jurisdictional discovery. Pls.' Maum Opp'n 12-13. District courts do have discretion to authorize jurisdictional discovery, but "this discretion is ordinarily exercised when a plaintiff has made out a colorable claim of personal jurisdiction but lacks key supporting facts that might reasonably be identified through such discovery." *Boyer Works USA, LLC v. Spin Master Prods.*, No. 21-CV-7468 (AKH), 2022 WL 1266090, at *5 (S.D.N.Y. Apr. 28, 2022); *see also Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18-19 (2d

**PLAINTIFFS CROSS-MOTION TO TRANSFER**

Plaintiffs request that, in the event the Court finds a lack of personal jurisdiction over the Maum Entities, as it has, it should transfer the entire lawsuit to the United States District Court for the District of New Jersey. Pls.' Maum Opp'n 25-27. But that request can be swiftly denied. Pursuant to 28 U.S.C. § 1406(a), where a court lacks personal jurisdiction over a party, the court may transfer the action to another district where the case could have been brought if it is in "the interest of justice" to do so. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (collecting cases). This provision protects "plaintiffs who were diligent in initiating suit . . . [from] forfeit[ing] their action as a result of venue quirks of which responsible plaintiffs would not necessarily have known." *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992). But the provision should not be used to "reward plaintiffs for their lack of diligence in choosing a proper forum." *Id*. Moreover, courts "can transfer cases only to districts that would otherwise have personal jurisdiction over the defendants, and the proponents of transfer bear the burden of establishing that the venue and jurisdiction are proper in the proposed district court." *Krisko v. Marvel Ent., LLC,* 473 F. Supp. 3d 288, 301 (S.D.N.Y. 2020).

Here, Plaintiffs provide no compelling reason for a transfer to the District of New Jersey. They do not, for example, state that their claims against the Maum Entities would be time-barred upon refiling in a proper forum. *Cf. Daniel*, 428 F.3d at 435 (holding that "[a] compelling reason for transfer" is when "a plaintiff's case, if dismissed, would be time-barred on refiling in the

---

Cir. 2015) (summary order) ("Where plaintiffs do not establish a prima facie case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery." (citation omitted)). Here, Plaintiffs have "not made out a colorable claim of personal jurisdiction" against the Maum Entities. *Boyer Works USA*, 2022 WL 1266090, at *5. Nor do they identify what facts they could uncover through discovery that would support the exercise of personal jurisdiction over the Maum Entities. Accordingly, the Court declines to grant Plaintiffs' belated request for jurisdictional discovery.

9

proper forum" (cleaned up)). More significantly, they fail to establish that the District of New Jersey would be a proper forum. For instance, it is not clear that the District of New Jersey would have personal jurisdiction over the Maum Entities either. And even if it did, Koo would plainly be entitled to enforce the forum-selection clause to which he was a signatory and, thus, Plaintiffs' claims against him would be subject to transfer right back to this District. Put simply, transfer to the District of New Jersey would not solve Plaintiffs' jurisdictional problems; it would compound them. Accordingly, Plaintiffs' cross-motion to transfer is denied.

## KOO'S PARTIAL MOTION TO DISMISS

That leaves Koo's partial motion to dismiss pursuant to Rule 12(b)(6). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See*, *e.g.*, *Empire Merchs.*, 902 F.3d at 139; *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). A plaintiff's claims will survive a motion to dismiss, however, only if it alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, a plaintiff must show "more than a sheer possibility that [the defendant] has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If a plaintiff's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Significantly, Koo does not move to dismiss Plaintiffs' contract-based claims. Instead, his motion is limited to Plaintiffs' claims for breach of fiduciary duty, equitable accounting, and

veil piercing. *See* ECF No. 60 ("Koo's Mem."), at 1. The Court need not address further Plaintiffs' veil piercing claim which, for the reasons discussed above in connection with the Maum Entities' motion, fails the first prong of the relevant inquiry. *See In re Vebeliunas*, 332 F.3d at 91-92 (laying out the three-pronged inquiry for piercing the corporate veil). Thus, the Court turns to the other two claims.

**A. Breach of Fiduciary Duty**

Plaintiffs argue that there are two grounds to find that Koo owed them a fiduciary duty: first, on the ground that he, as a majority shareholder, owed a fiduciary duty to Koh, as a minority shareholder, *see* ECF No. 69 ("Pls.' Koo Opp'n"), at 16; and second, on the ground that Koh and Koo were "close friends," *id.* Both arguments fail.

The first argument fails for the simple reason that *Koh was never a shareholder* of the Maum Entities. Because Plaintiffs' claim is tantamount to "an allegation of breach of fiduciary duty owed to" the Maum Entities by Koo, "the law of the state of incorporation" — in this case, Delaware — "governs." *Walton v. Morgan Stanley & Co. Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980). To state a claim for breach of fiduciary duty under Delaware law, a plaintiff must plausibly allege the existence of a fiduciary duty. *See e.g., Mondero v. Lewes Surgical & Med. Assocs., P.A.*, No. 14-CV-588, 2018 WL 1532429, at *3 (D. Del. Mar. 29, 2018). Here, the fiduciary duty that Koo presumably owed to the Maum Entities does not extend to Koh because, as Plaintiffs themselves allege, Koh was never a shareholder of the Maum Entities. Indeed, the gravamen of Plaintiffs' claims is precisely that Koo reneged on his agreement to provide Koh with equity in the Maum Entities. *See* SAC ¶ 44. Nor does Koo's alleged promise to provide such equity suffice to give Koh the rights of a shareholder, as Delaware law provides that board approval is required for a person to obtain the rights of a shareholder. *See Grimes v. Alteon, Inc.*,

804 A.2d 256, 261-62 (Del. 2002). *Grimes* is particularly instructive. Much like here, the plaintiff there alleged that the Chief Executive Officer of the defendant company "promised orally that he would offer [the plaintiff] 10% of the [stock] offering. In return, [the plaintiff] promised orally to buy 10% of the offering." *Id.* at 258. The Delaware Supreme Court, however, held that the plaintiff's breach of contract claim suffered from a "fatal defect": The issuance of stock had not been approved by the company's board. *Id.* at 260. The requirement for board approval, the court explained, was required by Delaware statute. *See id.* It also served "an important policy" goal: "Explicit board approval . . . makes it more likely that the board will have considered thoroughly the reasons for and against the issuance. Thus, director approval . . . reduces later disputes about their propriety and enhances corporate stability and certainty." *Id.* at 262. The logic and holding of *Grimes* apply with full force here.

      The cases on which Plaintiffs rely, *see* Pls.' Koo Opp'n 9-10, are inapposite. For one thing, they are all New York cases, and, as noted, Delaware law applies. For another, they are easily distinguished from this case. In *Donoghue v. Local.com Corp.*, No. 07-CV-8550 (LBS), 2009 WL 260797 (S.D.N.Y. Feb. 3, 2009), for example, the company's "Board of Directors met and approved a private placement of common stock and warrants." *Id.* at *1. The very next day, the plaintiff provided consideration for the stock. Under those circumstances, the court held that the plaintiff had gained the "privileges and rights of ownership," notwithstanding the fact that the official stock certificate had not been transferred. *Id.* at *3. In *Jedrzejcyk v. Gomez*, 985 N.Y.S.2d 18 (2014), meanwhile, there was no indication that board approval was required as the shares were created by virtue of the relevant transaction itself. *See id.* at 19. Similarly, in *Rocha Toussier y Asociados, S.C. v. Rivero*, 585 N.Y.S.2d 384, 384 (1992), there was a proper "issuance of each of four certificates of stock," and the only question was whether the plaintiff

was the proper recipient of those duly issued shares.  Plaintiffs' unexplained string-cite to a series of other cases does not shed further light on the matter as they merely stand for the basic proposition, irrelevant here, that ownership of stock does not necessarily turn on possession of stock certificates.  *See, e.g.*, *322 W. 47th St. HDFC v. Tibaldeo*, 146 N.Y.S.3d 783, 784 (1st Dep't 2021); *Matter of M. Kraus, Inc.*, 645 N.Y.S.2d 304, 305 (1st Dep't 1996); *Matter of Rappaport*, 487 N.Y.S.2d 376, 378 (2d Dep't 1985); *Walsh v. Somerset Grp., Inc.*, 357 N.Y.S.2d 301, 302 (4th Dep't 1974).

Plaintiffs' second argument that Koo owed Koh a fiduciary duty is based on the allegedly "close friend[ship]" between the two.  *See* Pls.' Koo Opp'n 16.  This argument is even more easily rejected.  Plaintiffs cite two cases, but both are inapposite.[6]  In *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993), the Second Circuit merely noted that a fiduciary relationship might exist in certain "informal relationships where it can be readily seen that one party reasonably trusted another" and explained that "[e]xamples of such informal fiduciary relationships found in the writings of scholarly commentators include priest and parishioner, bank and depositor, majority and minority stockholder, and close friends or family members." *Id.* at 151.  The facts alleged by Koh, including that he was a sophisticated businessman who drafted the contract to which Koo agreed, *see* SAC ¶¶ 1-2, 22, *see also* ECF No. 4-2, do not indicate this type of relationship.  In *Penato v. George*, 383 N.Y.S.2d 900 (1976), meanwhile, the plaintiff was a less sophisticated party who was allegedly defrauded by someone who held himself out to be an expert and repeatedly guided the actions of the plaintiff throughout the

---

[6] The cases cited by Plaintiffs involved application of New York law.  For that reason, and because the argument turns on the relationship between Koh and Koo and does not pertain to the Maum Entities' corporate governance, the Court applies New York law.  In any event, there is no reason to believe that the outcome would change if Delaware law applied here too.

relationship. *Id.* at 903-05. Here, by contrast, it was *Koh* who, Plaintiffs allege, was the expert and provided guidance to Defendants. *See* SAC ¶¶ 1-2, 22-24. Indeed, Plaintiffs allege that it was *Koo* who "shared deeply personal feelings and information about himself with [Koh] . . . during times of distress." *Id.* ¶ 16.

In short, Plaintiffs fail to plausibly allege that Koo owed Koh a fiduciary duty. Instead, the transaction at issue was effectively between "parties dealing at arms length." *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 460 (S.D.N.Y. 2006). It follows that Plaintiffs' fiduciary duty claim fails as a matter of law. *See id.*

### B. Equitable Accounting

To obtain an equitable accounting "under New York law, a plaintiff must show (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Soley v. Wasserman*, No. 08-CV-9262 (KMW), 2013 WL 6388401, at *4 (S.D.N.Y. Dec. 6, 2013) (internal quotation marks omitted); *see also Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 207 (S.D.N.Y.2011) (Sullivan, J.). "The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011). In evaluating what relationship is required, the Second Circuit has explained that "a plaintiff must show either a fiduciary or confidential relationship with the defendant." *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 49 (2d Cir. 1996); *see also Palazzo v. Palazzo*, 503 N.Y.S.2d 381, 384 (1st Dep't 1986). "Under New York law, a 'confidential relationship' in this context refers to a relationship 'which induced plaintiff to entrust defendant with property or money.'" *KJ Roberts & Co. Inc. v. MDC Partners Inc.*,

14

No. 12-CV-5779 (LGS), 2014 WL 1013828, at *12 (S.D.N.Y. Mar. 14, 2014), *aff'd*, 605 F. App'x 6 (2d Cir. 2015) (summary order).

Plaintiffs' equitable accounting claim fails because they fail to allege the existence of a fiduciary or confidential relationship between Koh and Koo. The Court has already explained the absence of a fiduciary relationship between the two. Koh's argument that their relationship qualified as "confidential" fares no better. For a relationship to be "confidential," one party must entrust another with property or money. *See KJ Roberts & Co.*, 2014 WL 1013828, at *12. Here, however, Plaintiffs merely allege that they were not paid — a standard breach of contract claim. Nowhere do Plaintiffs allege that they affirmatively entrusted any property or money to Koh. (Although Koh personally invested in Koo's ventures predating the Maum Entities, those investments are not the bases for Plaintiffs' equitable accounting claim.) Accordingly, Plaintiffs' equitable accounting claim against Koo must be and is dismissed as well.

## CONCLUSION

For the foregoing reasons, the Maum Entities motion' to dismiss for lack of personal jurisdiction is GRANTED, as is Koo's motion to dismiss Plaintiffs' claims for breach of fiduciary duty, equitable accounting, and veil piercing. By contrast, Plaintiffs' cross-motion to transfer and Defendants' motion to take judicial notice are DENIED.

The Court denies leave to amend to cure the dismissed claims against Koo. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Plaintiffs have had two opportunities to amend, *see* ECF Nos. 31, 53, and the Court explicitly cautioned Plaintiffs that they would "not be given any further opportunity to amend the complaint to address issues raised

15

by the motion to dismiss," ECF No. 48.  On top of that, Plaintiffs fail to identify any facts in their possession that would cure the defects discussed above.  In light of the foregoing, the Court concludes that any amendment would be futile.  *See, e.g.*, *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."); *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases).

Plaintiffs and Koo shall appear for a telephonic initial pretrial conference on **September 7, 2023,** at **11:00 a.m.**  In advance of the conference, Plaintiffs and Koo shall comply with the Court's Order of August 16, 2022, ECF No. 8, including by submitting a revised joint status letter and revised proposed Case Management Plan no later than the **Thursday prior to the conference**.

One final housekeeping matter remains.  Defendants previously filed motions to seal certain information, *see* ECF Nos. 13, 32, 61, which the Court granted temporarily.  Although the information at issue is subject to a presumption in favor of public access, *see generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006), "courts may deny access to records that are 'sources of business information that might harm a litigant's competitive standing,'" *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2014 WL 12772236, at *2 (S.D.N.Y. Nov. 5, 2014) (noting that "[t]he need to protect sensitive commercial information from disclosure to competitors seeking an advantage may constitute" an interest outweighing the presumption of public access); *Coscarelli v. ESquared Hosp. LLC*, No. 18-CV-5943 (JMF), 2021 WL 5507034, at *21 (S.D.N.Y. Nov. 24, 2021) (same).  Here, Defendants

seek only limited sealing — without opposition — of sensitive commercial information. Upon review of their motions, the Court concludes that their minimal redactions are well supported and thus grants their motions to maintain the information under seal.

The Clerk of Court is directed to terminate Maum Capital Group, Inc. and Maum Holdings, Inc. as Defendants and to terminate ECF Nos. 57, 59, and 64.

SO ORDERED.

Dated: August 21, 2023
      New York, New York

                                                     JESSE M. FURMAN
                                                     United States District Judge